UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ENRIQUE MELGAR MARTINEZ,<br><br>　　　　　Defendant. | CASE NO. CR09-5329BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR A *FRANKS* HEARING |

This matter comes before the Court on Defendant's Motion to Suppress Evidence and for a *Franks* Hearing. Dkt. 43. The Court has considered the pleadings filed in support of and in opposition to the motion, heard oral argument of counsel, and has considered the remainder of the file herein and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 14, 2009, the government filed an Indictment against Defendant Enrique Melgar Martinez alleging two counts of possession of herion with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Dkt. 7

On December 11, 2009, Defendant filed a Motion to Suppress Evidence and for a Franks Hearing. Dkt. 43. On December 14, 2009, the government responded. Dkt. 47. On December 15, 2009, the Court held an evidentiary hearing on the motion. Dkt. 50.

ORDER – 1

# II. FACTUAL BACKGROUND

At the hearing, the government conceded to the statement of facts as stated in Defendant's brief, which reads as follows:

> On April 21, 2009, [Special Agent ("SA")] Lee Herd of the [Drug Enforecemnet Agency ("DEA")] based in Missoula, Montana contacted SA Errin Jewell of the DEA based in Tacoma, Washington and requested assistance with an ongoing heroin investigation. SA Herd stated his office had been investigating a heroin trafficking organization, whose source of supply resided in Tacoma, Washington. He identified the suspected source of supply as Gina Vargas, who resided in Tacoma, Washington. Various persons in Montana had stated she was their source of supply of heroin and had been for many years (some as long as 10 years). Gina Vargas had been indicted in Federal Court in Montana as a result of the Montana DEA heroin investigation.
>
> On April 22, 2009, SA Jewell and SA Herd with help from the Tacoma Police Department Special Investigations Division (Tacoma SID) arrested Gina Vargas. Ms. Vargas allegedly told SA Herd the following information:
>
> 1. That her current heroin source of supply was named "Carlos."
> 2. That he had only been delivering to her during the past week.
> 3. "Carlos" was a Hispanic Male, 5'5" tall, 160 lbs, with a mustache and medium build;
> 4. That he lived nearby because he delivered to her within twenty minutes of her placing an order;
> 5. That she would order 10 ounces at one time that would be delivered in a large ball;
> 6. That "Carlos" parks in the alley behind her house and comes to the back door.
> 7. That the number to cell phone used by "Carlos" was 206-446-2143; and
> 8. That "Carlos" had delivered 10 ounces of heroin to her the day before.
>
> Later that same day Ms. Vargas gave 10 ounces of heroin to SA Herd and agreed to try set up "Carlos."
>
> At approximately 2:00 pm and at the direction and in the presence of SA Jewell and SA Herd, Ms. Vargas called "Carlos" and asked him to stop by her home. The conversation was recorded and has been filed with the court. No mention of drugs or anything illegal was made, whether directly or indirectly (code), in the very brief conversation.
>
> At approximately 2:25 pm, Mr. Melgar-Martinez parked a Ford Ranger Pickup down the street from Ms. Vargas' home. He walked towards the front door of the residence. Ms. Vargas stated that this was her source. As Mr. Melgar-Martinez was almost to the door it bust open and officers/agents ran out with guns pointed at the defendant and assisted by other officers/agents who came from the side of the home threw the defendant to the ground, several held guns to his head, others handcuffed

ORDER – 2

him. After Mr. Melgar-Martinez was thrown to the ground and handcuffed a ball of heroin that had been hidden in the crouch area of his pants and that was completely out of site was discovered on the ground by the officers/agents. Mr. Melgar-Martinez was not observed doing anything illegal prior to being arrested. Mr. Melgar-Martinez made various incriminating statements after his illegal arrest including information on his source.

The vehicle Mr. Melgar-Martinez was driving was taken into custody and transported to the Tacoma Police Department indoor secured parking facility. On April 23, 2009 a Washington State Search Warrant was applied for and received. It was executed on April 27, 2009 and approximately 3000 grams of heroin was found in the vehicle.

Dkt. 43 at 2-4.

The government claims that the phone call between Ms. Vargas and Carlos appears to be as follows:

Carlos: Yeah?

Gina: Hey this is Gina.

Carlos: What's up?

Gina: Can you come over?

Carlos: Yeah, it's gonna take 25 minutes, thirty minutes away.

Gina: 20 minutes?

Carlos: Yeah.

Gina: OK thanks.

Carlos: Talk to you later.

Dkt. 47 at 3.

At the hearing, the government's first witness was City of Tacoma Detective Robert Baker. Detective Baker testified as to the credibility of the confidential informant Gina Vargas. He testified that Ms. Vargas had worked for him from approximately June of 2006 until approximately October of 2008 and that her information and assistance had led to charges against approximately twenty defendants in state and federal court. He also testified that Ms. Vargas had never lied to him nor had she failed to do what was

1  expected of her as a confidential informant. He said that if he was to give her a grade on a
2  scale of A to F, it would be an A.

3  Detective Baker testified that Ms. Vargas had made several "reliability buys" for
4  him.  He claimed that these buys were when the informant finds people selling narcotics
5  without the help of the police and then purchases the narcotics to prove to the police that
6  he or she is an honest and reliable confidential informant.  Detective Baker testified that
7  Ms. Vargas had completed several reliability buys for him.

8  On cross examination, Detective Baker admitted that Ms. Vargas was eventually
9  arrested on the suspicion that she had been illegally selling drugs for the last ten years.
10  Detective Baker stated that he had no knowledge that she was selling drugs while she
11  worked for him as a confidential informant.

12  The government then called SA Jewell who testified to the circumstances of the
13  arrests of Ms. Vargas and Defendant.  He claimed that, once arrested, Ms. Vargas agreed
14  to make a controlled buy to assist the police in arresting her supplier.  He also claimed
15  that Ms. Vargas gave detailed information as to her supplier that matched a typical heroin
16  trafficking operation.  He testified that he wasn't suprised by how vague or short Ms.
17  Vargas' phone call to Carlos was because that was how orders for illegal drugs were
18  typically placed with suppliers of illegal drugs.

### III. DISCUSSION

Defendant moves to "suppress all evidence seized from his person and all statements made by him at the time he was arrested" because he argues that he was arrested without probable cause. Dkt. 43 at 1-2. Defendant also moves for a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), because

> [i]f the material false statements that were either intentionally or with reckless disregard for the truth made in the search affidavit are stricken there would be no probable cause to search the vehicle Mr. Melgar-Martinez was driving shortly before his illegal arrest.

Dkt. 43 at 2.

**A. Probable Cause**

The Fourth Amendment protects individuals from warrantless arrests unless there is probable cause. *Ornelas v. U.S.*, 517 U.S. 690, 695 (1996). Probable cause to make a warrantless arrest exists when police have knowledge of trustworthy facts and circumstances sufficient for a prudent person to believe that an offense has been or is being committed by the suspect. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The probable cause test for making a warrantless arrest is the same as for the issuance of an arrest or search warrant. *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975). The facts upon which to base probable cause can come from several sources, including information from a reliable known informant, or information from an anonymous or unproven source that can be independently corroborated by law enforcement. *Draper v. U.S.*, 358 U.S. 307, 313 (1959).

To determine whether an informant's tip is sufficient to support a finding of probable cause, a court must use a "totality-of-the-circumstances approach" that takes into consideration the informant's "veracity" or "reliability" and her "basis of knowledge." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Ninth Circuit has identified several factors to which a court should look to determine the reliability of an informant's tip. *See United States v. Rowland*, 464 F.3d 899, 907-08 (9th Cir. 2006). These factors include whether the informant is known or anonymous, whether the informant has a proven track record of reliability, the informant's basis of knowledge, and whether the informant "provides detailed predictive information about future events that is corroborated by police observation." *Id.*

In this case, the record supports the veracity and reliability of the confidential informant. Ms. Vargas was a known informant who had a proven track record of providing reliable information regarding illegal drug trafficking and illegal drug suppliers. Moreover, Ms. Vargas gave detailed information to the officers regarding her supplier "Carlos" and the methods used by "Carlos" to supply the illegal drugs.

1 Therefore, the Court finds that, prior to Defendant's arrest, the officers had received
2 detailed information from a reliable, known informant.

3 Under the totality of the circumstances, the reliable and detailed information
4 offered by Ms. Vargas provides meaning to the innocuous phone call from Ms. Vargas to
5 "Carlos." Ms. Vargas claimed that the established pattern of suppling drugs was that
6 "Carlos" would arrive within twenty minutes of the phone call and would be delivering
7 ten ounces of heroin. Approximately twenty-five minutes after Ms. Vargas made the
8 phone call, Defendant arrived at Ms. Vargas' house and Ms. Vargas physically identified
9 Defendant as her supplier before they arrested Defendant. This additional corroborating
10 evidence supports the reliability of Ms. Vargas' information.

11 Therefore, the Court denies Defendant's motion to suppress because, under the
12 totality of the circumstances, there was probable cause to arrest Defendant.

**B.** *Franks*

By holding an evidentiary hearing, the Court essentially granted Defendant's motion as to the *Franks* hearing. The Court, however, denies Defendant's request to declare the warrant invalid based on the assertion that the warrant included false information that was material and made intentionally or with reckless disregard for the truth. As found above, the credible information provided by Ms. Vargas gave meaning to the phone call between Ms. Vargas and Defendant. The statement in the warrant that, during the phone call, Ms. Vargas "requested 10 ounces of black tar heroin" is not false information considering Ms. Vargas' detailed description of Defendant's established procedure of supplying illegal drugs. Even if one considered the statement to be false based solely on the exact language of the phone conversation, the record does not support the assertion that the officer included the challenged statement in the warrant intentionally or with reckless disregard for the truth. Therefore, the Court denies Defendant's motion to declare the warrant invalid.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the Defendant's Motion to Suppress Evidence and for a Franks Hearing (Dkt. 43) is **DENIED**.

DATED this 17th day of December, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge